NOT FOR PUBLICATION (Doc. Nos. 7, 9)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CARLTON CARTWRIGHT, | : |
| Plaintiff, | : Civil No. 14-6004 (RBK/JS) |
| v. | : |
| | : **OPINION** |
| INDYMAC BANK, F.S.B. et al., | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court on the Motion to Dismiss of Defendants IndyMac Bank, F.S.B. ("IndyMac"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and HSBC Bank USA, National Association ("HSBC") (collectively "Defendants"), Plaintiff Carlton Cartwright's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 7), as well as Plaintiff's Motion for Remand to State Court (Doc. No. 9). This action is based on Plaintiff's claims involving a mortgage he claims was fraudulently originated. The Court considers first Plaintiff's Motion for Remand, in order to assure itself that jurisdiction exists in this case. Because the Court determines that Plaintiff's Motion for Remand shall be denied, the Court considers next Defendant's Motion to Dismiss, which the Court will grant.

I.      **FACTUAL ALLEGATIONS**[1]

Plaintiff is the owner of the real property located at 261 John F. Kennedy Way, Willingboro, New Jersey 08046 (the "Property"). (Compl., Identity of Parties and Land ¶ 1.) On February 8, 2007, Plaintiff entered into a loan transaction with IndyMac by which IndyMac lent Plaintiff $222,400, which was evidenced by a promissory note (the "Note") and secured by a mortgage on the Property (the "Mortgage"). (Id., Pertinent Facts and Law ¶ 1.) MERS was nominee for IndyMac, as set forth in the Mortgage documents. (See Ex. B to Clark Cert., Mortgage at 2.)[2]

According to Plaintiff, IndyMac was closed by the Office of Thrift Supervision ("OTS") on or around July 11, 2008, and the Federal Deposit Insurance Corporation ("FDIC") was named as the receiver. (Compl., Identity of Parties and Land ¶ 2.) Allegedly, OneWest Bank, National Association ("OneWest") succeeded IndyMac by purchase from the FDIC sometime thereafter. (Id.)

Soon after the loan origination, the Note and Mortgage were securitized on the secondary loan market. (Id., Pertinent Facts and Law ¶¶ 19-20.) Then, MERS filed an assignment of the Mortgage to BAC Home Loan Servicing, L.P. ("BAC") on April 2, 2010, claiming to be the

---

[1] On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the Plaintiff." Accordingly, the following facts are taken from Plaintiff's Complaint. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

[2] A court may "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1191, 1196 (3d Cir. 1993); see also In re Burlington Coat Factory, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting the inquiry is whether the claims in the complaint are "based" on the extrinsic document). In considering the pending Motion to Dismiss, the Court will consider the Mortgage (see Ex. B to Clark Cert., Mortgage), and the Note (see Ex. C to Clark Cert., Note), attached to Defendant's Motion to Dismiss. Plaintiff's claims arise from alleged defects in the transfer of the Note and Mortgage during the years that followed. The parties do not dispute the authenticity of these documents or the Court's reliance upon them. Thus, the Court may properly consider Defendants' attached materials because failure to do so might permit the Plaintiff to survive the present Motion to Dismiss simply by failing to attach these documents to his Complaint.

beneficiary of the Mortgage.  (See id., Pertinent Facts and Law ¶¶ 41, 50.)  Without describing any transfers in the interim, Plaintiff alleges that on March 12, 2012, Bank of America, N.A. ("BANA") assigned the Note and the Mortgage to HSBC.  (Id., Pertinent Facts and Law ¶ 64; id., Fourth Quiet Title Claim/Cause of Action ¶ 115.)

The thrust of the remaining one hundred or more paragraphs in Plaintiff's rather puzzling Complaint is that every party's interest in the Mortgage and Note is or was invalid, and Plaintiff is entitled to a judgment quieting title to the Property and declaring the Note and Mortgage void and of no legal effect.  (See generally Compl.; id., Prayer for Relief ¶¶ 1-7.)  Though it is unclear how or why Plaintiff contests the validity of IndyMac's original interest in the Mortgage and Note, the problems seem to begin in earnest with the assignment from MERS to BAC.  Plaintiff concludes that MERS had no authority to assign the Mortgage and Note to BAC because MERS had no beneficial interest in the Property.  (See generally id., Pertinent Facts and Law ¶¶ 44, 52, 56, 63.)  The events taking place between MERS's alleged assignment to BAC and BANA's alleged assignment to HSBC are missing, but Plaintiff goes on to conclude that BANA had no interest in the Note and Mortgage when it assigned the same to HSBC.  (Id., Pertinent Facts and Law ¶ 64.)

Apparently Plaintiff's position, as referenced in his first claim, is that the only "true" owners of the Property interest are investors, "each holding a proportional and typically miniscule interest in [Plaintiff's] note and security instrument."  (Id., First Quiet Title Claim/Cause of Action ¶ 88.)  Thus, MERS and HSBC have no interest in the Mortgage and Note, and are not entitled to Plaintiff's mortgage payments.  (Id., First Quiet Title Claim/Cause of Action ¶ 90.)  The second and third claims are much of the same, (see id., Second Quiet Title Claim/Cause of Action; id., Third Quiet Title Claim/Cause of Action), and the fourth claim

additionally challenges IndyMac's ability to transfer "the contractual relationship with the borrower" without "fulfilling the statute of frauds formalities prior to the April 2, 2010 assignment." (Id., Fourth Quiet Title Claim/Cause of Action ¶ 117.) For all the reasons expressed in the four quiet title claims, Plaintiff believes he is entitled to have the interests of IndyMac, MERS, and HSBC in the Note and Mortgage declared void, to have Defendants declared disqualified from enforcing Plaintiff's mortgage, to have Defendants ordered to summon the "true current owners consisting of holders of mortgage-backed securities owning at least a majority interest in Plaintiff's Note and [Mortgage]" to this case, and to have the Court remove all clouds upon Plaintiff's Property. (Id., Prayer for Relief.)

## II.     PROCEDURAL HISTORY

Plaintiff filed his original Complaint in the Burlington County Superior Court, Burlington County, New Jersey on August 16, 2014. (Notice of Removal ("NOR") (Doc. No. 1) ¶ 1.) Defendants were all served with the initial pleadings between August 26, 2014, and September 5, 2014. (Id. ¶ 2.) Thereafter, Defendants all timely removed this action under 28 U.S.C. § 1441, based on this Court's diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1367, on September 25, 2014. (See id. ¶ 2-3.) In Defendants' Notice of Removal they averred that there was complete diversity between the citizenship of the parties, (id. ¶ 3),[3] and the amount in controversy in this matter exceeds $75,000. (Id. ¶ 4.)

On October 2, 2014, Defendants filed the present Motion to Dismiss the Complaint. (Doc. No. 7.) Plaintiff failed to respond to Defendants' Motion to Dismiss, and instead filed the

---

[3] Specifically, Defendants claim that OneWest Bank, National Association, the successor by purchase of certain assets from the Federal Deposit Insurance Corporation ("FDIC"), as receiver for IndyMac, is a national banking association with its main office located in California, MERS is a Delaware corporation with its principal place of business located in Virginia, HSBC is a national banking association with its main office located in Virginia, and Plaintiff is a citizen of New Jersey.

instant Motion for Remand to State Court on October 22, 2014. (Doc. No. 9.) In support of his Motion, Plaintiff argues that there is no federal question jurisdiction, and diversity jurisdiction is not available to national banks. Defendants response in opposition to Plaintiff's Motion, submitted on November 3, 2014 (Doc. No. 10), was the last submission in this matter.

Because the Court finds that the two motions in this case have been fully and sufficiently briefed by the parties, it turns to the merits of the parties' motions.

### III. LEGAL STANDARDS

#### a. Motion for Remand

Federal Courts are courts of limited jurisdiction and may only decide cases as authorized by the Constitution. Kokkonen v. Guardian Life Ins., 511 U.S. 375, 377 (1994). Congress has authorized federal subject matter jurisdiction in civil suits where the amount "in controversy exceeds the sum or value of $75,000" and the parties are "citizens of different States." 28 U.S.C. § 1332(a). The statutory requirement that parties be citizens of different states means that complete diversity must exist; if any two adverse parties are co-citizens, there is no jurisdiction. See Strawbridge v. Curtiss, 7 U.S. 267 (1806); State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 531 (1967).

Under 28 U.S.C. § 1441, a defendant may remove an action filed in state court to a federal court with original jurisdiction over the action. Once an action is removed, a plaintiff may challenge removal by moving to remand the case back to state court. To defeat a plaintiff's motion to remand, the defendant bears the burden of showing that the federal court has jurisdiction to hear the case. Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985). Where the decision to remand is a close one, district courts are encouraged to err on the side of remanding the case back to state court. See id. ("Because lack of jurisdiction would

make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand.")

      b. **Motion to Dismiss**

Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips, 515 F.3d at 233). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002). Yet, while "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 678-79.

To make this determination, a court conducts a three-part analysis. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Id. (quoting Iqbal, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not

entitled to the assumption of truth." Santiago, 629 F.3d at 131 (quoting Iqbal, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Santiago, 629 F.3d at 131 (quoting Iqbal, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Id.

**IV. DISCUSSION**

    **a. Motion for Remand**

Because the Court must satisfy itself of its own jurisdiction before it decides any other substantive matters, it will address Plaintiff's Motion for Remand First. In his Motion for Remand, Plaintiff asserts several reasons why he believes remand is appropriate, none of which the Court finds either relevant or persuasive.

First, Plaintiff argues that the Complaint must be remanded because there is no federal question jurisdiction over the quiet title claims. (Motion for Remand ("MFR") at 13-15.) Though the Court agrees there is no federal question jurisdiction pursuant to 28 U.S.C. § 1331, Defendants did not invoke § 1331 in support of this Court's jurisdiction as part of their Notice of Removal. Rather, Defendant's specifically invoke 28 U.S.C. § 1332, noting that this Court has diversity jurisdiction over this matter. (NOR ¶ 3.)

Plaintiff also apparently contests the exercise of diversity jurisdiction in this case, though his reasoning is unclear. (MFR at 15-17.) He seems to argue that national banks cannot remove suits to which they are parties merely on account of being federal corporations, and cites Leather

Mfrs.' Bank v. Cooper, 120 U.S. 778 (1887) and 28 U.S.C. § 1348 in support of his argument. (MFR at 16.)

Leathers Mfrs.' Bank dealt with a federal law passed in 1882 that restricted national banks from invoking federal jurisdiction "solely 'on the ground of their Federal origin,'" and placed them on the "same footing as the banks of the state where they were located." Wachovia Bank v. Schmidt, 546 U.S. 303, 310 (2006) (quoting Petri v. Commercial Nat'l Bank of Chicago, 142 U.S. 644, 649 (1892); Leather Mfrs.' Bank, 120 U.S. at 780). That principle remains in effect in § 1348. See Wachovia Bank, 546 U.S. 310-11. Thus, national banking associations are to be "deemed citizens of the States in which they are respectively located," and they do not have access to federal courts merely by virtue of being national banks. See § 1348; see also Wachovia Bank, 546 U.S. at 318 (holding that national banking associations are "deemed citizens" of "the State designated in its articles of association as its main office.")[4] Thus, Leather Mfrs.' Bank does not foreclose the Court's exercise of diversity jurisdiction over the national banking association defendants in this case.

There is no indication that Defendants have attempted to remove this case based solely on the fact that OneWest and HSBC are national banking associations. Instead, Defendants clearly invoke diversity jurisdiction, pursuant to § 1332(a), in favor of removal. With respect to their allegations of the parties' citizenship, Defendants claim in their Notice of Removal that Plaintiff is a citizen of New Jersey, OneWest, receiver for IndyMac, is a national banking association with its main office located in California, MERS is a Delaware corporation with its principle place of

---

[4] In fact, while Wachovia Bank clarified where national banking associations are deemed to be citizens, it also accepted outright that they were to be treated as any other corporation for diversity purposes. See Wachovia Bank, 546 U.S. at 306, 308.

business located in Virginia,[5] and HSBC is a national banking association with its main office located in Virginia. Based on these averments as to the citizenship of the parties, it appears that complete diversity exists between the Plaintiff and all Defendants.

Further, Defendants pled that the amount in controversy exceeds $75,000, (NOR ¶ 4), and based on the fact that Plaintiff has claimed the Note was originally worth $222,400, (Compl., Pertinent Facts and Law ¶ 1), the Court has no reason to doubt that the amount in controversy requirement in § 1332(a) has not been satisfied.

Because the Court finds that the prerequisites for diversity jurisdiction pursuant to § 1332(a) have been met, it will deny Plaintiff's Motion for Remand and proceeds to discuss Defendants' Motion to Dismiss.[6]

### b. Motion to Dismiss

All four of Plaintiff's Counts are quiet title claims. Under New Jersey law, quiet title actions are brought when ownership or title to property is disputed or contested. N.J. Stat. § 2A:62-1. This may include situations where a property owner seeks to resolve whether a putative assignee of an otherwise valid mortgage properly holds the mortgage. See Suser v. Wachovia Mortg., FSB, 433 N.J. Super. 317, 324-25 (App. Div. 2013).

---

[5] When a corporation is a party, it "shall be deemed to be a citizen of every state and foreign state by which it has been incorporated and of the state or foreign state where it has its principal place of business …." 28 U.S.C. 1332(c)(1).

[6] Plaintiff also apparently raises a standing challenge to OneWest's representation of IndyMac's interests in this case. (See MFR at 17.) He argues there is no documentary evidence attached to the Complaint or Defendants' papers that indicate OneWest has an interest in Plaintiff's Note and Mortgage. (Id.) Yet, Plaintiff's own Complaint acknowledges that OneWest acquired IndyMac after its failure, (Compl., Identity of the Parties and Land ¶ 2), and Defendants have stated that OneWest is "receiver for [IndyMac]." (NOR.) Despite Plaintiff's attempt to create an ambiguity over which "assets" OneWest purchased from the FDIC, without any evidentiary support, his assertions are conclusory and do not call into question OneWest's interests in this litigation. As receiver for IndyMac, it is clear that, to the extent Plaintiff is attempting to invalidate IndyMac's interests in the Note and Mortgage, OneWest faces an actual or imminent injury based on this action. See Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010).

While the Court can follow Plaintiff's claims in broad strokes, such as, that Plaintiff contests Defendants' interests in his Property and the validity of the various assignments of the Note and Mortgage, Plaintiff has either left out, or has failed to clearly articulate, important details in his Complaint which would lend support to his claims and give rise to the relief he seeks.

For example, it is unclear why or even whether Plaintiff contests the validity of IndyMac's own interest in the Note and Mortgage. Nor does Plaintiff clearly address what interest he claims IndyMac or MERS currently have in the Note and Mortgage, despite claiming HSBC is the only party with a presently recorded interest in Plaintiff's Property. (Compl., Fourth Quiet Title Claim/Cause of Action ¶ 115.) There are also significant gaps in Plaintiff's timeline—namely the time between OneWest's acquisition of IndyMac's assets and the alleged assignment by MERS to BAC in 2010 and the time between that assignment and the assignment between BANA and HSBC in 2012. Though Plaintiff discusses various legal rules or doctrines, such as the Uniform Commercial Code, the Statute of Frauds, and 28 U.S.C. § 860F, the Court cannot follow how these principles apply to Plaintiff's claims. Moreover, Plaintiff has included numerous paragraphs in his Complaint that were apparently obtained or informed by "the internet, Law Library, [and the] Securities and Exchange Commission Web Site," (id., Pertinent Facts and Law ¶ 67), and set forth a lengthy dissertation on how loans are transferred on the secondary market, but fails to adequately connect this volume of information to his actual claims. Finally, and fatally for Plaintiff's claims, he fails to allege factual matter which would suggest

Defendants' interests in the Note and Mortgage were ever invalid, or that they were unable to assign the Note and Mortgage during the period covered by the Complaint.[7]

What the Court, and Defendants, are left with when trying to make sense of the Complaint are Plaintiff's numerous legal conclusions that IndyMac, MERS, and HSBC held no beneficial interest in the Note and Mortgage, and all transfers after the origination of the same were invalid. This is insufficient to support Plaintiffs action to quiet title. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing Twombly, 550 U.S. at 555); see also Iqbal, 556 U.S. at 678 (noting that Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation.) (citing Twombly, 550 U.S. at 555). While Plaintiff may dispute the interest in his Property held by each Defendant, he must offer factual allegations which lend some support to his position in order to maintain his claims.

Because Plaintiff has not adequately alleged claims to quiet title against Defendants at this time, the Court will grant Defendants' Motion to Dismiss. The Complaint will be dismissed in its entirety without prejudice.

## V.    LEAVE TO AMEND

Normally, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)). Indeed, even when "a plaintiff does not seek leave to amend a deficient complaint after a defendant

---

[7] Nor, as Defendants note, has Plaintiff addressed the language in the Note and the Mortgage, which expressly permits multiple assignments of the same without Plaintiff's consent. (See Mortgage at 11 ("The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."); Note at 1 ("I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'").)

moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Here, the Court is unable to conclude that Plaintiff could not amend his Complaint to properly raise a claim to quiet title against Defendants.  Therefore, in accordance with the Order accompanying this Opinion, Plaintiff shall be granted time to file a Motion for Leave to File an Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2), and consistent with L. Civ. R. 7.1(f).[8]  However, Plaintiff is reminded that Rule 8 requires that a pleading contain, at a minimum, "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief," and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(1)-(2), (d)(1).

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Remand will be **DENIED** and Defendants' Motion to Dismiss will be **GRANTED**.  Plaintiff's Complaint will be **DISMISSED WITHOUT PREJUDICE**.  An accompanying Order shall issue.


Dated:   3/30/2015                               s/ Robert B. Kugler
                                                 ROBERT B. KUGLER
                                                 United States District Judge

---

[8] Specifically, if Plaintiff files a Motion for Leave to Amend Complaint, he shall attach to the Motion a copy of the proposed Amended Complaint, as required by Loc. Civ. R. 7.1(f).